# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CHADWICK RENE GORE and SUZANNE SCHOLTE, *as representatives of the estate of Chadwick James Gore*,     *Plaintiffs* <br><br> v. <br><br> RAFAEL CRISPIN, JR. and WILLIE HUBERT WINGFIELD III,     *Defendants* | § § § § § § § § § § § <br><br> Case No. 1:24-CV-00615-RP |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants' Motion under Rule 12(b) for Intra-District Transfer and Dismissal, filed July 1, 2024 (Dkt. 4); Plaintiffs' Response, filed July 25, 2024 (Dkt. 6); and Defendants' Reply, filed August 7, 2024 (Dkt. 7). By Text Order issued October 17, 2024, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the U.S. District Court for the Western District of Texas.

### I.   Background

Plaintiffs Chadwick Rene Gore and Suzanne Scholte, as representatives of the estate of their deceased son, Chadwick James Gore ("James"), bring this civil rights suit under 42 U.S.C. § 1983 against Defendants Rafael Crispin, Jr. and Willie Hubert, officers with the Killeen Police Department. Plaintiffs allege that Defendants wrongfully detained James for the murder of his infant daughter without probable cause.

### A. Alleged Facts

Plaintiffs allege the following facts in their Original Complaint. Dkt. 1. At 3:49 a.m. on June 18, 2022, James, who was a Specialist in the U.S. Army, and his partner, Alexis Rushlow, called 911 from their residence in Killeen, Texas, after they discovered that their three-week-old infant daughter, Evelynn Gore, was not breathing. Original Complaint, Dkt. 1 ¶¶ 9, 10. James "frantically attempted cardiopulmonary resuscitation (CPR), following instructions from the emergency operator." *Id.* ¶ 10. Emergency responders arrived at the scene a few minutes later, performed CPR on Evelynn, and transported her to the hospital. *Id.* ¶ 11. Three hours later, Evelynn was pronounced dead. *Id.*

Defendants arrived at the hospital and interviewed James and Rushlow. *Id.* ¶ 13. Defendants then transported James and Rushlow to the Killeen police station and questioned them about Evelynn's death, questioning James in an interrogation room for more than 90 minutes. *Id.* ¶¶ 14-15, 20. Defendants used "coercive and aggressive interrogation techniques in an attempt to elicit a confession," and the "interrogation was aggressive, abusive, and involuntary." *Id.* ¶¶ 15, 24. A few hours after James returned home, he committed suicide. *Id.* ¶ 15.

The Office of the Medical Examiner at the Southwestern Institute of Forensic Sciences performed an autopsy on Evelynn, concluding that Evelynn died as a result of blunt force injuries and that her death was a homicide. Dkt. 6-1 at 9. The parties do not state whether Rushlow or anyone else was ever prosecuted for Evelynn's death.

### B. Litigation

Plaintiffs, who are Virginia residents, allege that Defendants violated James' Fourth Amendment rights by wrongfully detaining him without probable cause. Dkt. 1. Defendants move to dismiss for (1) improper venue under Rule 12(b)(3); (2) failure to state a claim for relief under

2

Rule 12(b)(6); and (3) lack of subject matter jurisdiction under Rule 12(b)(1), contending that Plaintiffs lack Article III standing to bring a Fourth Amendment claim on behalf of their son.

## II.     Analysis

Courts should consider jurisdictional attacks "before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). While Defendants purport to bring a jurisdictional attack on Plaintiffs' Fourth Amendment claim based on lack of Article III standing, Fourth Amendment standing "is not a jurisdictional question and hence need not be addressed before addressing other aspects of the merits of a Fourth Amendment claim." *Terrence Byrd v. United States*, 584 U.S. 395, 411 (2018). The Court therefore need not address Defendants' Fourth Amendment standing argument before considering the merits of Plaintiff's claim or whether Plaintiffs filed this suit in the wrong venue. *Id.* But the Court will address Defendants' improper venue argument before turning to the merits. *See Delta Elecs., Inc. v. Vicor Corp.*, 724 F. Supp. 3d 645, 651 (W.D. Tex. 2024) (addressing improper venue argument before Rule 12(b)(6)); *Rawls v. Old Republic Gen. Ins. Grp.*, 489 F. Supp. 3d 646, 652 (S.D. Tex. 2020) ("Generally the court should not consider challenges under Rule 12(b)(6) until after jurisdiction and venue challenges are resolved.").

## III.    Motion to Dismiss for Improper Venue

Defendants argue that Plaintiffs' suit should be dismissed under Rule 12(b)(3) and 28 U.S.C. § 1406(a) because Plaintiffs filed in the wrong venue. They contend that the Austin Division is an improper venue because (1) Plaintiffs and Defendants are not residents of the Austin Division, and (2) "no part of the relevant acts or omissions occurred in the Austin Division." Dkt. 4 at 7.

Section 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Rule 12(b)(3) states that a party

3

may move to dismiss a case for "improper venue." "These provisions therefore authorize dismissal only when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).

The question whether venue is "wrong" or "improper" is generally governed by 28 U.S.C. § 1391. *Id.* Section 1391(b) provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a). *Atlantic Marine*, 571 U.S. at 56.

> The text of § 1391 only imposes restrictions on the judicial *district* in which a case may be filed; it does not impose any restriction on the *division* within such district where a case may be filed. . . . Thus, under § 1391, a division is only improper when it falls within an improper judicial district. Conversely, § 1391 permits a civil action to be filed in any division, so long as the division is within a proper judicial district.

*Garrett v. Hanson*, 429 F. Supp. 3d 311, 315 (E.D. Tex. 2019); *see also Murray v. City of Copperas Cove, Tex.*, No. 1:23-CV-541-DII, 2024 WL 3799463, at *2 (W.D. Tex. Aug. 13, 2024) ("Section 1391 refers to judicial districts and does not distinguish between the divisions of a judicial district. All divisions within a district are proper venues for any case that may be filed within that district."); *Says v. M/V DAVID C DEVALL*, 161 F. Supp. 2d 752, 753 (S.D. Tex. 2001) (stating that § 1391

4

"speaks in terms of districts not divisions. Thus, if venue is proper in the Houston Division of the Southern District of Texas it is *ipso facto* proper in the Galveston Division—as well as in the Divisions of Corpus Christi, Victoria, Brownsville, McAllen and Laredo.").

Because Defendants reside in the Western District of Texas and the events at issue occurred in the Western District of Texas, venue is proper in any division of the Western District of Texas, including the Ausin Division. This Magistrate Judge therefore recommends that the District Court deny Defendants' motion to dismiss under Rule 12(b)(3) and § 1406(a).

### IV. Motion to Transfer Under Section 1404(a)

In the alternative, Defendants ask the Court to transfer this case under § 1404(a) to the Waco Division "for the convenience of the parties and witnesses." Plaintiffs argue that Defendants have not sustained their burden to show that transfer is "clearly more convenient." Dkt. 6 at 6.

**A. Standard of Review**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). A party seeking a transfer under § 1404(a)

> "must show good cause" by "clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." "When the transferee venue is not clearly more convenient than the venue chosen by the Plaintiff, the Plaintiff's choice should be respected." When a defendant is haled into court, some inconvenience is expected and acceptable. Assuming that jurisdiction exists and venue is proper, the fact that litigating would be more convenient for the defendant elsewhere is not enough to justify transfer. In other words, the standard is not met by showing one forum is more likely than not to be more convenient, but instead the party must adduce evidence and arguments that clearly establish good cause for transfer based on convenience and justice.

*Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*")) (cleaned up); *see also In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) ("[T]o establish 'good cause,' a movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue.").

The transfer analysis proceeds in two parts. First, the court asks whether the case "might have been brought" in the destination venue. 28 U.S.C. § 1404(a). If the answer is yes, then the court must consider the following factors to determine whether the movant has shown good cause for the transfer—that the destination venue is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen II*, 545 F.3d at 315.

> The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* (citations omitted). These factors "are not necessarily exhaustive or exclusive," and "none . . . can be said to be of dispositive weight." *Id.* Moreover, "[w]here there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer." *Bruck*, 30 F.4th at 434.

6

**B. Private Interest Factors**

The parties do not dispute that this action "might have been brought" in the Waco Division under 28 U.S.C. § 1391(b). Having crossed that initial threshold, the Court assesses the relevant factors to determine whether Defendants have met their burden to demonstrate that the Waco Division is "clearly more convenient than the venue chosen by the plaintiff." *Volkswagen II*, 545 F.3d at 315.

  1. **Relative Ease of Access to Sources of Proof**

The first private interest factor focuses on the location of documents and physical evidence relating to the case. *Id.* at 316. "The question is *relative* ease of access, not *absolute* ease of access. That means this factor weighs in favor of transfer where the current district lacks any evidence relating to the case." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (citation omitted).

Defendants argue that most of the sources of proof in this case are located in the Waco Division: Evelynn and her parents lived in Killeen; the emergency personnel who treated Evelynn lived and treated her in Killeen; Evelynn was transported to a hospital in Bell County and her medical records are located there; Defendants live and work in Killeen; Defendants questioned James at the police station in Killeen; and documents from the investigation into Evelynn's death are in Killeen. The only physical evidence outside the Waco Division is evidence from the autopsy, which was performed in Dallas.

Plaintiffs identify no evidence in the Austin Division. This factor favors transfer. *TikTok*, 85 F.4th at 358.

  2. **Availability of Compulsory Process**

The second factor focuses on "the availability of compulsory process to secure the attendance of witnesses." *Volkswagen II*, 545 F.3d at 315. This factor favors transfer when non-party witnesses are outside the District's subpoena power and "a proper venue that does enjoy absolute

7

subpoena power for both depositions and trial" is available." *TikTok*, 85 F.4th at 360 (citation omitted). District courts have the authority to compel non-party witnesses to attend a trial, hearing, or deposition conducted "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1)(A).

Defendants argue that this Court would not have subpoena power over any witness from the Southwestern Institute of Forensic Sciences in Dallas, where Evelynn's autopsy was performed. Plaintiffs identify no non-party witness over whom the Waco Division would lack subpoena power. This factor also favors transfer.

### 3. Costs of Attendance for Willing Witnesses

The third private interest factor focuses on the cost of attendance for willing witnesses. *Volkswagen II*, 545 F.3d at 317. "Testifying imposes myriad external costs on witnesses," and the third factor "attempts to internalize and minimize those costs by favoring the venue that is more convenient from the perspective of willing witnesses." *Clarke*, 94 F.4th at 514. Courts in the Fifth Circuit "assesses convenience as a function of distance." *Id.* If the transferee venue is more than 100 miles from the transferor, "the factor of inconvenience borne by witnesses positively and linearly scales with the additional distance they must travel." *Id.* All potential material and relevant witnesses must be considered. *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765 (E.D. Tex. 2009).

All willing witnesses in this case reside in the Waco Division except Plaintiffs, who live in Virginia. Plaintiffs identify no willing witnesses who live in the Ausin Division. This factor favors transfer.

### 4. All Other Practical Problems

The fourth private interest factor considers "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Volkswagen II*, 545 F.3d at 315. Plaintiffs do not contend that any practical problems exist, but argue that the Court should consider their choice of forum under this factor. They point out that it would be more convenient to fly to Austin than Waco because there are more flight options. Dkt. 6 at 7-8. The plaintiff's choice of forum is not a separate factor under the § 1404(a) analysis. *Volkswagen II*, 545 F.3d at 315 n.10 ("A plaintiff's choice of forum, however, is not an independent factor within the *forum non conveniens* or the § 1404(a) analysis."). The Court finds that the final private interest factor is neutral.

## C. Public Interest Factors

### 1. Administrative Difficulties Flowing from Court Congestion

The first public interest factor looks to "the administrative difficulties flowing from court congestion." *Volkswagen II*, 545 F.3d at 315. "This factor concerns whether there is an appreciable difference in docket congestion between the two forums." *Universal Connectivity Techs. Inc. v. HP Inc.*, No. 1:23-CV-1177-RP, 2024 WL 3305724, at *6 (W.D. Tex. July 3, 2024) (citation omitted).

Plaintiffs argue that there are significant delays in the Waco Division because "the Court went three and half months" before issuing a scheduling order in one case and took more than two years to remand another. Dkt. 6 at 10. But Plaintiffs acknowledge that both the Austin and Waco Divisions "are burdened with enormous caseloads and unquestionably in need of additional resources." *Id.* This factor is neutral.

### 2. Local Interest in Having Localized Interests Decided at Home

The local interest inquiry does not look to the parties' connections to each forum, "'but rather the significant connections between a particular venue and the events that gave rise to a suit.'"

9

*Clarke*, 94 F.4th at 511 (quoting *TikTok*, 85 F.4th at 364). The local interest inquiry "is concerned with the interest of *non-party citizens* in adjudicating the case. Considerations such as the location of the injury, witnesses and the plaintiff's residence are useful proxies for determining what local interests exist in each venue." *Id.* (cleaned up). Localized interests are present when "the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Chamber of Com. of United States of Am.*, 105 F.4th 297, 308 (5th Cir. 2024) (citations omitted).

The Court finds that this factor strongly favors transfer. All the events that gave rise to this suit occurred in Killeen: Evelynn died in Killeen, and Plaintiffs allege that James was questioned at the Killeen police station by Killeen police officers who violated his rights. There are significant connections between the events that gave rise to this suit and the Waco Division. The Court finds that Waco has a significantly greater interest in this case than Austin.

### 3. Other Factors

The parties agree that the third and fourth public interest factors are inapplicable and therefore neutral. The Court agrees. *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013).

### D. Conclusion

Because all the private and public interest factors either favor transfer or are neutral and this case has no connection to this Division, the Court finds that Defendants have shown good cause for transfer to the Waco Division of the Western District of Texas. *Bruck*, 30 F.4th at 433.

## V.   Recommendation

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Defendants' Motion to Dismiss (Dkt. 4). The Court **RECOMMENDS** that the District Court **DENY** Defendants' Motion to Dismiss under Rule 12(b)(3), **GRANT** Defendants'

Alternative Motion to Transfer Venue under 28 U.S.C. § 1404(a), and **TRANSFER** this case to the Waco Division of the Western District of Texas, where the transferee court can address the merits of Defendants' Motion to Dismiss Plaintiffs' Fourth Amendment claim.

**IT IS ORDERED** that this case be removed from this Magistrate Judge's docket and returned to the docket of the Honorable Robert Pitman.

### VI.   Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on January 21, 2025.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE